UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LENIOR SMITH,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | No.  2:18-cv-2942 KJM AC P<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

I.    Procedural History

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is plaintiff's motion for partial summary judgment. ECF No. 48.

This case proceeds on the second amended complaint.  ECF No. 22.  On screening, the court found that plaintiff had stated excessive force claims against defendants Suchoski, Binder, Martinez, and Rose based on an incident that occurred on August 14, 2016, and defendants Monge, Tillery, and Colby based on an incident that occurred on January 18, 2018.  ECF No. 26 at 7.  Plaintiff also stated a claim for failure to protect against defendants Cook and Stinson based on an incident in August 2018 in which plaintiff was attacked by another inmate with a bag of rocks.  Id.  All other claims and defendants were dismissed.  ECF No. 35.  After the close of

discovery, plaintiff filed the instant motion for partial summary judgment in which he seeks summary judgment on his claims against Suchoski, Binder, Martinez, and Rose. ECF No. 48. Defendants obtained an extension of time to file an opposition to the motion, ECF No. 53, and filed their opposition (ECF No. 54) two days after the extended deadline. ECF No. 54. The opposition acknowledges its untimeliness and requests that the filing deadline be extended two days, nunc pro tunc. Id. at 1 n.2. That request will be granted.[1]

II.     Plaintiff's Allegations

As relevant to the motion for summary judgment, the second amended complaint alleges that on August 14, 2016, defendants Suchoski, Binder, and Martinez surrounded plaintiff in the dayroom. Without provocation, Suchoski stated "Don't you ever threaten me!" ECF No. 22 at 5. When plaintiff denied ever doing so, Suchoski told him to face the window and put his hands behind his back. Id. In response, plaintiff produced his medical chrono that showed he was supposed to be handcuffed using waist chains and could not be cuffed behind his back. Id. Binder then yelled "Get down!" and swung his fist, which was holding an unexpanded metal baton, and struck plaintiff in the face, knocking him off his feet. Id. Suchoski, Binder, and Martinez then proceeded to beat plaintiff and Suchoski extended his metal baton and struck plaintiff in the back of the head. Id. at 5-6. Other officers began responding and Martinez continued to order plaintiff to give him plaintiff's right hand so that it could be cuffed, but plaintiff was unable to do so because of the officers on top of him. Id. at 6. Leg shackles were then put on plaintiff's ankles, after which defendant Rose proceeded to push plaintiff's ankles toward the back of his head. Id. As a result of the assault, plaintiff suffered a broken jaw and head injury and developed post-traumatic stress disorder. Id. at 4.

////

////

---

[1] Defendants explain that due to an internal miscommunication following reassignment of the case to new counsel, a holiday was not properly calculated into the time available for finalizing the filing the document. ECF No. 54 at 1 n.2. Upon a showing of excusable neglect, time may be extended on a motion after it has expired. Fed. R. Civ. P. 6(b)(1)(B). Good cause appearing, the request for an extension will be granted under this rule and the opposition will be deemed timely.

2

III. Motion for Summary Judgment

A. Plaintiff's Arguments

Plaintiff argues that he is entitled to summary judgment on his excessive force claims against defendants Suchoski, Binder, Martinez, and Rose because their use of force was clearly excessive. ECF No. 48 at 20-31.

B. Defendants' Response

Defendants argue that plaintiff's motion should be denied because there are material issues of fact that preclude granting summary judgment. ECF No. 54.

IV. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

> "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."

Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

3

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

////

////

V. <u>Undisputed Facts</u>

Although plaintiff has submitted a statement of undisputed facts (ECF No. 48 at 13-20) and a number of those facts are undisputed, they are largely immaterial to resolution of the motion for summary judgment. Additional facts are therefore taken from other portions of the briefing on the motion as appropriate.

At all relevant times, plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) and housed at High Desert State Prison (HDSP) where defendants Suchoski, Binder, Martinez, and Rose were employed as correctional officers. ECF No. 48 at 4-5, ¶¶ 10, 12; Defendants Statement of Disputed Facts (DSDF) (ECF No. 54-2) ¶¶ 1, 7. On August 14, 2016, plaintiff was in the dayroom when he was approached by Binder, Martinez, and Suchoski and Suchoski ordered plaintiff to submit to handcuffs. ECF No. 48 at 13-14, ¶ 5; DSDF ¶ 1. A physical altercation ensued during which Suchoski struck plaintiff on the back of the head with a baton, which is considered deadly force. ECF No. 48 at 17, ¶ 23; Response to PSUF (ECF No. 54-1) ¶ 23. At one point during the altercation, Martinez had his arm around plaintiff's neck. ECF No. 48 at 17, ¶ 21; Response to PSUF ¶ 21. After plaintiff had been placed in leg restraints, Rose grabbed the restraints and lifted them in an upward motion. ECF No. 48 at 7, ¶ 19; DSDF ¶ 7.

VI. <u>Disputed Facts</u>

Although the parties agree that a use of force took place on August 14, 2016, their versions of events differ as set forth below.

Under plaintiff's version of events, Suchoski and Binder approached him while in the dayroom and, unprovoked, Suchoski told plaintiff "don't you ever threaten me again!" ECF No. 48 at 6, ¶ 17. When plaintiff denied making any threats, Suchoski ordered him to face the window and put his hands behind his back, at which point plaintiff stated that he had a medical chrono for waist chains. <u>Id.</u> Suchoski told plaintiff that he did not care and to "put [his] hands behind [his] back and cuff up." <u>Id.</u> When plaintiff began protesting, Binder yelled, "Get down!" while swinging his right fist, which was closed around an unexpanded baton, and struck plaintiff on the left side of his jaw with enough force to knock him to the floor. <u>Id.</u> Suchoski began

5

striking plaintiff on the back of his head with an expanded baton and Martinez began choking plaintiff from behind while other individuals beat plaintiff and yelled, "Stop Resisting, stop resisting." Id. at 6-7, ¶¶ 17-18. After plaintiff's legs were restrained, Rose appeared and grabbed the chain connecting the restraints and attempted to push plaintiff's legs so that they touched the back of his head, causing plaintiff to yell out in pain. Id. at 7, ¶ 19. As a result of the assault, plaintiff suffered "a broken jaw, split open cranium, lacerated nose face, ankle, leg and knee." Id. at 17, 20.

According to defendants' version of events, Binder, Martinez, and Suchoski were conducting a shift change when they noticed plaintiff in the dayroom and confronted him about being outside of his cell. DSDF ¶ 1. Plaintiff became verbally abusive and Suchoski ordered him to submit to handcuffs. Id. Plaintiff ignored the order, stated that he would not be handcuffed, and took a step forward while pointing his finger at Suchoski. Id. Binder then plaintiff to get down on the floor. Id. Plaintiff ignored the order and began shouting obscenities at Binder before clenching his fists and taking an aggressive stance. Id. Believing that plaintiff was about to attack, Suchoski drew his pepper spray and Binder attempted to draw his baton, but plaintiff punched Binder in the right eye. DSDF ¶¶ 2-3. Binder then attempted to strike plaintiff in the abdomen with the baton but could not tell if it made contact while plaintiff continued to throw punches at Binder, hitting him in the nose, mouth, and right cheek. DSDF ¶ 3. Plaintiff and Binder ended up on the floor, at which point plaintiff began to choke Binder. Id.

When plaintiff began choking Binder, Martinez, who did not have any of his equipment because of the shift change, grabbed plaintiff around the neck with his left arm in an attempt to free Binder from plaintiff's chokehold. DSDF ¶ 4. Suchoski decided to drop his pepper spray in favor of his baton because his fellow officers would also get hit if he discharged his pepper spray. DSDF ¶ 5. Suchoski saw that plaintiff had his hand around Binder's neck and was trying to choke Binder, and in fear for Binder's life, Suchoski deployed a forward strike with his baton that was aimed at plaintiff's upper left back and shoulder area. Id. Due to plaintiff's erratic movements, the baton hit plaintiff on the back left side of his head instead. Id.

////

After being struck in the head, plaintiff let go of Binder and Martinez and Suchoski pulled plaintiff off of Binder and placed plaintiff on his stomach on the floor. DSDF ¶ 6. Plaintiff continued refusing to be handcuffed, so Martinez and Suchoski pulled plaintiff's hands from under his stomach and placed them behind his back so Binder could put on the handcuffs. Id. When Rose arrived, plaintiff was on the ground and secured in handcuffs and leg restraints. DSDF ¶ 7. Rose obtained waist restraints and attempted to switch them with plaintiff's handcuffs, but plaintiff began kicking his feet. Id. Rose ordered plaintiff to stop but plaintiff refused to comply and kicked Rose in the shin. Id. In response, Rose grabbed the leg restraints and lifted them in an upward motion after which another officer forced plaintiff's heels toward his buttocks to prevent plaintiff from striking any other officers. Id. At that point, plaintiff complied with orders to lay down and Rose switched the handcuffs to waist restraints. Id.

VII. Discussion

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7.

When determining whether the force was excessive, the court looks to "the extent of injury suffered by an inmate," in addition to "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9-10 (citing Whitley, 475 U.S. at 327).

7

Excessive force cases often turn on credibility determinations, and "[the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (alteration in original) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)). Therefore, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Id. (quoting Santos, 287 F.3d at 853). The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citations omitted).

In this case, whether defendants' use of force was excessive depends entirely upon which version of events is believed. Although plaintiff alleges that he was assaulted for no reason, defendants have produced evidence rebutting this claim. Under defendants' version of events, plaintiff clearly presented a threat when he punched and began choking Binder, and defendants' use of force escalated in proportion to the threat posed by plaintiff. Additionally, while it is undisputed that a strike to the head with a baton is considered deadly force, defendants dispute that Suchoski intended to strike plaintiff in the head and claim that he was instead aiming for plaintiff's back and shoulders but missed due to plaintiff's erratic movements. These factual disputes are material to deciding whether defendants' use of force was excessive and turn on credibility determinations that are the province of a jury.

VIII. Conclusion

Because there are material disputes of fact, plaintiff's motion for summary judgment should be denied.

IX. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that your motion for summary judgment be denied because a decision whether defendants' use of force was excessive depends on which version of facts is believed, and determining which version of events is true is the job of a jury.

////

////

////

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that defendants' motion for an extension of time (ECF No. 54 at 1 n.2) is GRANTED and the opposition to plaintiff's motion for summary judgment is deemed timely.

IT IS FURTHER RECOMMENDED that plaintiff's motion for partial summary judgment (ECF No. 48) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 7, 2022.

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE